**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
SCRANTON
SEP 15 2026
PER ____ DEPUTY CLERK

**JENN BROTHERS,**
Plaintiff,
v.
**AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania, Defendant.**

Defendants.
Civil Action No. 3:26 cv 2642

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Jenn Brothers, proceeding **pro se**, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65 for emergency injunctive relief requiring the appropriate Pennsylvania election officials to place Plaintiff on the November 2026 general-election ballot as an independent candidate for the United States House of Representatives from Pennsylvania's Ninth Congressional District.

Plaintiff requests immediate relief because the Commonwealth's ballot-printing and ballot-finalization processes are approaching, and every additional day Plaintiff remains excluded from the ballot creates additional and increasingly difficult-to-remedy harm.

In support of this Motion, Plaintiff states as follows:

## I. INTRODUCTION

1. Plaintiff Jennifer "Jenn" Brothers is seeking election to the United States House of Representatives from Pennsylvania's Ninth Congressional District in the November 2026 general election.
2. Plaintiff initially sought election through the Democratic political process before ultimately pursuing her congressional candidacy as an independent.
3. Plaintiff's transition to independent candidacy occurred in the context of political retaliation and conflict arising from Plaintiff's efforts to raise concerns concerning campaign-finance reporting and accountability.
4. While participating as a Democratic candidate, Plaintiff discovered information that she believed indicated that campaign funds had been underreported.
5. Plaintiff raised those concerns and sought accountability concerning the reporting of those funds.
6. Following Plaintiff's efforts to raise and expose those concerns, Plaintiff experienced harassment, political retaliation, and defamatory attacks.
7. Plaintiff contends that these actions were connected to her efforts to expose and seek accountability concerning the alleged financial reporting irregularities.

8. Plaintiff subsequently pursued her candidacy as an independent candidate outside the Democratic Party's candidate-selection structure.
9. Plaintiff attempted to obtain ballot access through Pennsylvania's statutory independent-candidate process.
10. Plaintiff did not satisfy the statutory signature threshold applicable to an independent congressional candidate.
11. Plaintiff does not ask this Court to count, validate, review, aggregate, or otherwise consider individual petition signatures.
12. Plaintiff does not seek ballot placement on the basis that her petition signatures satisfy the statutory requirement.
13. Instead, Plaintiff challenges the constitutionality of applying Pennsylvania's independent-candidate ballot-access requirement to her under the particular circumstances presented.
14. Pennsylvania imposes a substantially greater signature requirement upon independent congressional candidates than upon candidates seeking nomination through the Democratic or Republican Party process.
15. Under the requirements applicable to Plaintiff's congressional race, Democratic and Republican candidates were subject to a 1,000-signature requirement, while an independent congressional candidate was required to obtain more than 5,400 signatures under the applicable statutory calculation.
16. Plaintiff contends that this substantial disparity must be evaluated in the context of the political environment in which independent candidates are required to obtain public political association from voters.
17. The political consequences associated with supporting candidates outside the Democratic Party structure were not hypothetical.
18. Members of the Democratic Party in a neighboring Pennsylvania county were removed from party positions pursuant to the same party rule concerning support for candidates who were not Democratic candidates.
19. Those removals occurred weeks before the removal of Plaintiff's campaign volunteer, Jackie Stockage, and were publicly reported.
20. The rule was therefore a known and recently enforced provision within the relevant political organization.
21. Ms. Stockage was an elected member of the Democratic Party organization and supported Plaintiff's independent candidacy.
22. Ms. Stockage was subsequently removed from her elected party position pursuant to the same party rule.
23. After she was informed that she had been removed, a proceeding concerning her removal was subsequently held.
24. During that proceeding, Ms. Stockage expressly stated that she was recording because there was no stenographer present and she wanted to preserve an accurate record of what was said during the proceeding.
25. The proceeding continued after that announcement.
26. Plaintiff possesses the original recording and related evidence concerning the proceeding.

27. Plaintiff also possesses evidence concerning a second member of her campaign team who experienced political consequences associated with supporting Plaintiff's candidacy.
28. These events provide direct evidence that the political consequences associated with supporting an independent candidate were concrete rather than speculative.
29. Plaintiff does not contend that the Democratic Party's private conduct, standing alone, constitutes state action.
30. Rather, Plaintiff presents the documented political environment as evidence relevant to evaluating the practical burden imposed by Pennsylvania's ballot-access requirements.

---

## II. LEGAL STANDARD

31. Plaintiff incorporates the preceding paragraphs.
32. Federal Rule of Civil Procedure 65 permits a federal court to issue temporary and preliminary injunctive relief where necessary to prevent immediate and irreparable harm.
33. In determining whether preliminary injunctive relief is appropriate, courts consider the likelihood of success on the merits, the likelihood of irreparable harm in the absence of relief, the balance of equities, and the public interest.
34. Ballot-access restrictions implicate fundamental First Amendment rights of political speech and association.
35. The Supreme Court has instructed courts evaluating ballot-access restrictions to consider the character and magnitude of the burden imposed upon constitutional rights and the interests asserted by the State.
36. See *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

---

## III. PLAINTIFF'S FIRST AMENDMENT RIGHTS ARE SUBSTANTIALLY BURDENED

37. Plaintiff incorporates the preceding paragraphs.
38. The First Amendment protects political speech and political association.
39. The right to associate for the advancement of political beliefs includes the right of voters to associate around candidates and the right of candidates to seek support from voters.
40. Pennsylvania's ballot-access requirements directly regulate the circumstances under which an independent candidate may appear before the electorate.
41. The independent-candidate requirement applicable to Plaintiff is substantially greater than the requirement applicable to candidates seeking nomination through the major political parties.
42. Plaintiff does not contend that every difference between major-party and independent ballot-access procedures is unconstitutional.
43. Plaintiff contends, however, that the constitutional analysis must consider the actual burden imposed upon political association under the circumstances in which the requirement operates.
44. Here, the statutory burden operated in a political environment in which members of a major political party faced actual consequences for supporting candidates outside that party's candidate-selection structure.
45. Those consequences were demonstrated both before and during Plaintiff's independent candidacy.

46. Plaintiff personally experienced political retaliation after raising concerns concerning campaign-finance reporting while participating in the Democratic political process.
47. Members of the Democratic Party in a neighboring county were subsequently removed from party positions under the same rule concerning support for non-Democratic candidates.
48. Plaintiff's own campaign volunteer, an elected Democratic Party member, was subsequently removed from her party position under that same rule after supporting Plaintiff's independent candidacy.
49. The circumstances therefore demonstrate that the practical consequences associated with political association outside the Democratic Party structure were actual and foreseeable.
50. Plaintiff contends that these circumstances materially increased the burden upon obtaining the public political association required by Pennsylvania's independent-candidate ballot-access system.
51. The challenged requirement therefore cannot be evaluated solely by considering the numerical number of signatures required.

---

## IV. PLAINTIFF'S PRIOR RETALIATION IS RELEVANT TO THE PRACTICAL BURDEN

52. Plaintiff incorporates the preceding paragraphs.
53. Plaintiff's concerns about political retaliation did not arise after she failed to qualify for the ballot.
54. Plaintiff experienced political retaliation, harassment, and defamatory attacks after raising concerns concerning alleged underreporting of campaign funds while participating as a Democratic candidate.
55. Plaintiff's experience provided a concrete basis for understanding the potential political consequences of challenging established political interests and supporting candidates outside the party structure.
56. Plaintiff subsequently left the Democratic political structure and pursued an independent candidacy.
57. The subsequent removal of members of Plaintiff's campaign team for supporting that independent candidacy further demonstrated that the political consequences associated with independent political association remained real.
58. Plaintiff presents these facts as evidence of the circumstances surrounding application of the ballot-access requirement, not as a separate request for damages based upon defamation or harassment.
59. Plaintiff does not ask this Court in this action to adjudicate every underlying dispute concerning the alleged campaign-finance reporting, harassment, or defamatory statements.
60. Rather, Plaintiff asks the Court to consider the documented political circumstances when determining the character and magnitude of the burden imposed by Pennsylvania's ballot-access requirements.

---

## V. ANDERSON-BURDICK ANALYSIS

61. Plaintiff incorporates the preceding paragraphs.
62. Under *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), courts evaluating election regulations that burden constitutional rights consider the character and

magnitude of the asserted injury, identify the interests advanced by the State, and determine whether the challenged restriction is justified in light of those interests.

63. The severity of the burden informs the degree of scrutiny applied.
64. Pennsylvania's independent-candidate ballot-access requirement imposes a substantially greater signature burden upon Plaintiff than the requirement imposed upon candidates seeking nomination through the major political parties.
65. That burden operates in a political environment in which Plaintiff and members of her campaign team have experienced actual political consequences associated with political activity outside the Democratic Party structure.
66. Plaintiff therefore contends that the practical burden upon political association is greater than would exist in an environment in which voters could support an independent candidate without facing comparable political consequences.
67. Pennsylvania may have legitimate interests in preventing frivolous candidacies, ensuring a sufficient showing of voter support, and maintaining orderly elections.
68. Plaintiff does not challenge those interests in the abstract.
69. Plaintiff contends, however, that those interests must be weighed against the actual burden imposed upon Plaintiff and voters under the circumstances presented.
70. Plaintiff further contends that the State's interests do not justify the resulting burden upon Plaintiff's and voters' First Amendment rights under these circumstances.
71. Plaintiff therefore has a substantial likelihood of success on her constitutional challenge.

---

## VI. PLAINTIFF WILL SUFFER IMMEDIATE AND IRREPARABLE HARM

72. Plaintiff incorporates the preceding paragraphs.
73. Plaintiff is seeking election to federal office in the November 2026 general election.
74. Plaintiff is presently excluded from the ballot.
75. Every additional day that Plaintiff remains excluded from the ballot creates additional harm to Plaintiff's constitutional rights and to the associational rights of voters.
76. Candidates who are already qualified to appear on the ballot have additional time to campaign before voters.
77. During that time, those candidates may increase their name recognition, obtain media coverage, communicate their positions to voters, obtain endorsements, organize supporters, participate in campaign events, and otherwise establish electoral advantages.
78. Plaintiff is deprived of those same opportunities while she remains excluded from the ballot.
79. The resulting harm is cumulative.
80. Every additional day Plaintiff remains excluded creates another day during which voters are exposed to the campaigns of candidates already appearing on the ballot while Plaintiff is unable to participate on equal terms as a ballot-listed candidate.
81. Every additional moment of delay also reduces the remaining time available to Plaintiff to establish voter awareness before the election.
82. If Plaintiff is placed on the ballot only after substantial portions of the campaign period have elapsed, the lost time cannot be restored.

83. Plaintiff cannot retroactively recover opportunities for voter contact, media exposure, campaign events, public forums, endorsements, or name recognition that were lost while she was excluded from the ballot.
84. The injury therefore increases continuously with the passage of time.
85. Once the November 2026 election occurs, Plaintiff's opportunity to participate as a candidate and voters' opportunity to select Plaintiff will permanently expire.
86. Monetary damages cannot adequately remedy this injury.
87. Plaintiff therefore faces immediate and irreparable harm absent emergency relief.

---

**VII. THE BALANCE OF EQUITIES FAVORS RELIEF**

88. Plaintiff incorporates the preceding paragraphs.
89. Plaintiff faces the loss of a constitutional opportunity to participate in the 2026 general election.
90. Plaintiff also faces the loss of campaign time that cannot be recovered after the election calendar advances.
91. By contrast, requiring election officials to permit Plaintiff to appear on the ballot does not prevent other candidates from campaigning or appearing on the ballot.
92. Plaintiff seeks only the opportunity to present her candidacy to the electorate.
93. The equities therefore favor preserving Plaintiff's ability to participate in the election while the constitutional question is adjudicated.

---

**VIII. THE PUBLIC INTEREST FAVORS RELIEF**

94. Plaintiff incorporates the preceding paragraphs.
95. The public has a substantial interest in free and fair elections.
96. The public has an interest in meaningful political competition and in the ability of voters to choose among candidates exercising their constitutional rights.
97. The public also has an interest in ensuring that ballot-access requirements do not unnecessarily burden constitutionally protected political association.
98. Allowing Plaintiff to appear on the ballot does not require any voter to vote for Plaintiff.
99. It merely preserves the voters' ability to consider Plaintiff as one of their choices in the November 2026 general election.
100. The public interest therefore favors preserving voter choice while the Court considers Plaintiff's constitutional claims.

---

**IX. PETITION SIGNATURES, VOTER ASSOCIATION, AND RISK OF RETALIATION**

101. Plaintiff incorporates the preceding paragraphs.
102. Plaintiff expressly does not ask this Court to count, validate, aggregate, or review individual petition signatures.
103. Plaintiff does not seek to establish statutory compliance through the number of signatures gathered.
104. Plaintiff does not ask the Court to determine whether any particular voter signed a petition or whether any individual signature is valid.
105. The individual petition signatures are therefore not necessary to resolve Plaintiff's constitutional

claims or to determine the relief requested.

106. Requiring disclosure of individual petition signatures would nevertheless create an additional and unnecessary burden upon the political association rights of the citizens who supported Plaintiff's candidacy.

107. The signatures identify individual citizens who publicly associated themselves with an independent congressional candidate.

108. As described above, Plaintiff can provide evidence that individuals who supported Plaintiff's candidacy experienced actual political consequences within the Democratic Party structure.

109. The risk of retaliation is therefore not hypothetical.

110. Disclosure of individual petition signatures could identify citizens who exercised their political rights by supporting Plaintiff's candidacy and could expose those citizens to political, professional, organizational, or other consequences based upon that association.

111. Requiring citizens to choose between exercising their political right to support an independent candidate and exposing themselves to potential political retaliation would further burden the exercise of First Amendment associational rights.

112. Plaintiff therefore respectfully requests that the Court consider the constitutional issues presented without requiring disclosure of individual petition signatures or the identities of petition signers.

113. Plaintiff further requests that, if Defendants contend that information concerning petition activity is necessary to adjudicate this action, the Court first determine the relevance and necessity of such information before ordering disclosure of individual voter identities.

114. Plaintiff further requests that any information the Court determines must be produced be subject to appropriate confidentiality protections sufficient to prevent unnecessary public disclosure of the identities of citizens who associated themselves with Plaintiff's candidacy.

115. Plaintiff does not seek to conceal evidence relevant to the constitutional issues before the Court. Plaintiff seeks only to prevent unnecessary disclosure of the identities of individual citizens where those identities are not necessary to determine whether Pennsylvania's ballot-access requirements, as applied under the circumstances presented, impose an unconstitutional burden upon political association.

---

## X. EMERGENCY NATURE OF REQUESTED RELIEF

116. Plaintiff incorporates the preceding paragraphs.

117. The November 2026 general election is approaching.

118. The Commonwealth's election administration process requires ballots to be finalized and printed sufficiently in advance of the election.

119. Once Plaintiff's exclusion becomes incorporated into finalized and printed ballots, meaningful relief may become substantially more difficult or impossible.

120. Delay therefore creates a substantial risk that Plaintiff's constitutional claims will become effectively moot before they can receive meaningful judicial review.

121. Delay also creates continuing and cumulative campaign disadvantages.

122. Each day Plaintiff remains excluded from the ballot provides additional campaign time to candidates already appearing on the ballot while denying Plaintiff the same opportunity.

123.Plaintiff's campaign cannot recover those lost days after the fact.

124.Plaintiff accordingly requests expedited consideration of this Motion.

---

**XI. REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Jenn Brothers respectfully requests that this Court:

A. Issue a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65;

B. Enjoin Defendants from excluding Plaintiff from the November 2026 general-election ballot solely because Plaintiff did not satisfy Pennsylvania's statutory independent- candidate signature threshold;

C. Order the appropriate Pennsylvania election officials to place Jenn Brothers on the November 2026 general-election ballot as an independent candidate for Representative in the United States House of Representatives from Pennsylvania's Ninth Congressional District;

D. Alternatively, order such interim relief as is necessary to preserve Plaintiff's ability to appear on the November 2026 ballot while this Court adjudicates Plaintiff's constitutional claims;

E. Expedite consideration of Plaintiff's request because of the approaching ballot-printing and ballot-finalization deadlines;

F. Permit Plaintiff to litigate the constitutional issues presented without publicly disclosing individual petition signatures or the identities of petition signers;

G. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Jenn Brothers, Pro Se**
1688 State Route 367
Laceyville, PA 18623
Telephone: (865)712-8504
Email: jennbrothersforcongress@gmail.com
Date: 9/15/26
Signature: [signature]
**Jenn Brothers**