IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENN BROTHERS,
Plaintiff,

v.

AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania,
Defendant.

Civil No. 3:26-CV-02642
Hon. Jennifer P. Wilson

# PLAINTIFF'S BRIEF IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I. INTRODUCTION

This case concerns more than the number of signatures required to place an independent congressional candidate on the ballot. It concerns whether a State-created barrier may be evaluated without considering the political environment in which citizens must satisfy it.

Pennsylvania requires 1,000 signatures from a candidate seeking a party nomination at the primary for Representative in Congress. 25 P.S. § 2872.1(12). For an independent candidate, 25 P.S. § 2911(b) requires two percent of the largest vote cast for an office elected in the district at the preceding election. In Pennsylvania's Ninth Congressional District, the 2024 figure produces a requirement of 5,525 signatures.

Plaintiff challenges the constitutional burden created by applying that substantially greater requirement in circumstances where public association with an independent candidate may itself carry retalitory consequences.

## II. LEGAL STANDARD

A preliminary injunction requires consideration of the likelihood of success on the merits, irreparable harm, the balance of equities, and the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Ballot-access restrictions implicate the First and Fourteenth Amendments because they burden the rights of candidates and voters to associate for political purposes. *Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Courts therefore evaluate the character and magnitude of the burden imposed and weigh it against the interests

asserted to justify the restriction. *Anderson*, 460 U.S. at 789; *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

III. THE PRACTICAL BURDEN CANNOT BE MEASURED BY THE NUMBER OF SIGNATURES ALONE

Plaintiff does not ask the Court to adjudicate the validity, sufficiency, or calculation of individual nomination signatures.

The constitutional issue is the practical burden created when Pennsylvania requires an independent congressional candidate to obtain a substantially greater level of public political association than a candidate seeking a party nomination for the same office.

The burden is particularly significant because signing a nomination paper is not anonymous political thought. It is an identifiable act of political association with a particular candidate. The practical significance of that association depends upon the political environment in which it occurs.

Plaintiff alleges that environment includes actual political consequences for individuals who supported candidates outside an established party structure. She alleges that an elected party organization member was removed after supporting Plaintiff's independent candidacy and that another campaign-team member experienced political consequences associated with supporting the candidacy. Plaintiff also alleges that she experienced retaliation and harassment after raising concerns regarding what she believed to be underreported campaign-related financial activity while participating within the party structure.

These allegations do not require the Court to determine that the underlying financial conduct constituted a crime, nor does Plaintiff bring a separate whistleblower claim. They are relevant because they provide evidence that the consequences associated with political dissent and association are not merely speculative.

IV. PRIVATE PARTY CONDUCT DOES NOT HAVE TO BECOME STATE ACTION FOR THE FACTS TO MATTER

Plaintiff does not contend that the Democratic Party's private conduct, standing alone, constitutes state action. The Third Circuit has recognized limits on attributing private political-party conduct to the State. *See Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198 (3d Cir. 2009).

The constitutional injury Plaintiff challenges, however, is imposed by the Commonwealth's ballot-access requirement. Private political conduct is offered as evidence of the circumstances in which that State requirement operates.

Plaintiff describes the concern as a form of usurpation in a limited sense. Private political rules do not formally exercise Commonwealth authority. But when those rules impose consequences for political association while the State simultaneously requires extensive public association to obtain independent ballot access, they may, in practice, intrude upon the Commonwealth's responsibility to maintain a fair and meaningful electoral process.

The Court therefore need not find state action by the political party. It need only evaluate the actual burden created by the State's requirement under *Anderson* and *Burdick*.

V. ACCOUNTABILITY AND THE PUBLIC INTEREST

The alleged retaliation also bears directly on the public interest.

A functioning electoral system depends upon political participants being able to question established organizations, report suspected wrongdoing, and support candidates outside existing political structures. If individuals reasonably fear political consequences for doing so, the resulting chilling effect can discourage both political participation and the exposure of suspected misconduct.

That concern is particularly significant where the State's ballot-access system imposes a heightened burden on candidates operating outside established party structures. The combined effect may be to reinforce existing political barriers rather than expose political organizations to the scrutiny that an open electoral process is intended to provide.

Plaintiff does not ask the Court to resolve those private disputes in this action. She asks the Court to consider them as evidence of the real-world burden placed upon political association by the State's ballot-access requirement.

VI. IRREPARABLE HARM, EQUITIES, AND PUBLIC INTEREST

Exclusion from an election is irreparable because the election cannot be recreated after it occurs. Plaintiff risks losing voter contact, campaign opportunities, public forums, endorsements, media exposure, and the opportunity for voters to consider her candidacy.

The same injury affects voters who may wish to associate with and vote for Plaintiff.

The Commonwealth has legitimate interests in preventing frivolous candidacies and maintaining orderly elections. Plaintiff does not dispute those interests. The question is whether those interests justify the burden imposed under the circumstances alleged here.

Preserving Plaintiff's opportunity to appear on the ballot while the constitutional claim is adjudicated protects the judicial process from becoming effectively meaningless through the passage of time.

## VII. CONCLUSION

The challenged requirement should not be evaluated as a mathematical figure divorced from the political environment in which it operates. Plaintiff has alleged a substantially heightened State-imposed burden, actual political consequences associated with political association outside an established party structure, and circumstances in which raising concerns about potentially underreported political finances allegedly resulted in retaliation.

Those facts provide the context necessary to evaluate the practical burden under *Anderson* and *Burdick*. They also establish a substantial public interest in ensuring that ballot-access rules do not operate in a manner that chills political participation, accountability, or the reporting of suspected wrongdoing.

Plaintiff respectfully requests that the Court grant emergency relief preserving her opportunity to appear on the November 2026 general-election ballot while this constitutional challenge is adjudicated.

Respectfully submitted,

Jenn Brothers
Plaintiff, Pro Se
1688 State Route 367
Laceyville, PA 18623
Telephone: (865)712-8504
Email: jennbrothersforcongress@gmail.com
Date: September 24, 2026