**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JENN BROTHERS,<br><br>Plaintiff,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania,<br><br>Defendant. | : | Civil No. 3:26-CV-02642<br><br>Judge Jennifer P. Wilson |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiff challenges Pennsylvania's independent congressional nomination requirements as applied to her candidacy. The 5,525-signature threshold, compared with 1,000 signatures for major-party primary candidates, operated alongside requirements identifying political supporters in circumstances involving documented party discipline and reported retaliation. Plaintiff contends that these combined burdens implicate the First and Fourteenth Amendments.

After disciplinary action against a volunteer and reported removals of other party committee members, Plaintiff withheld nomination materials to avoid exposing participants to potential retaliation.

Plaintiff requests preliminary relief directing ballot placement if legally and practically available, or appropriately tailored relief addressing the alleged disclosure burden and permitting meaningful adjudication.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Candidacy and Transition to Independent Political Participation

Plaintiff Jenn Brothers began her congressional campaign in March 2025, more than eighteen months before the November 3, 2026, general election. Her federal candidacy was formally documented through the Federal Election Commission (FEC) in April 2025 under Candidate Identification Number H6PA09119. The candidate met the federal minimum standards of FEC Candidacy in December 2025 and submitted required candidate reporting.

Before leaving the Democratic Party the Plaintiff repeatedly requested intervention, not merely to address conduct directed toward herself, but to prevent further harm to the public including volunteers and supporters. Preserved written communications represent only a portion of these efforts. These communications corroborate Plaintiff's account that party was informed of her concerns; they were not the initial or exclusive means that information was communicated.

Plaintiff does not ask the Court to adjudicate the underlying campaign-finance allegations or attribute the conduct of private party officials to the Secretary. This history is relevant to the development of Plaintiff's concerns, her documented efforts to prevent further harm, and the circumstances surrounding her subsequent independent nomination effort.

Those circumstances also informed Plaintiff's decision not to submit Democratic primary nomination petitions by the March 10, 2026, deadline, following retaliation against Plaintiff and her volunteers after she reported alleged campaign-finance underreporting. Her decision to disassociate from the Democratic Party was not an abandonment of her candidacy; she no longer believed the party's leadership upheld the values she had attributed to it. *California Democratic Party v. Jones*, 530 U.S. 567 (2000); *Kusper v. Pontikes*, 414 U.S. 51 (1973). Following

requests from district voters, Plaintiff announced her independent candidacy on March 25, 2026. Because Plaintiff did not submit Democratic primary nomination petitions, she maintains that she did not trigger the restrictions under 25 P.S. §§ 2936(e) and 2911(e)(5), preserving her ability to pursue independent ballot placement for the same office. Subsequent disciplinary actions, including the Stockage hearing, heightened separate concerns about exposing supporters through independent nomination papers and the earlier collected Democratic petition papers.

Plaintiff challenges the cumulative burdens imposed by Pennsylvania's independent nomination framework as applied to her candidacy, including the interaction between signature requirements, required identification of political participants, and documented consequences associated with supporting independent candidates.

**B. Plaintiff's Independent Nomination Effort**

According to the Pennsylvania Department of State's official 2026 instructions, the period for circulating and filing political-body nomination papers began March 11, 2026, and ended August 3, 2026. Plaintiff and her volunteers circulated nomination papers during this period and obtained signatures from individuals willing to support her effort to appear on the general-election ballot. Voters approached were not segregated based on party alignment because the law does not require it. Plaintiff does not represent that she obtained a verified total of 5,525 valid signatures. Accordingly, Plaintiff understands that she cannot ask the Court to presume that she satisfied the statutory signature requirement or that every signature obtained would have been valid.

**C. Political-Party Retaliation During the Independent Nomination Period**

Jackie Stockage was elected as a Democratic committeeperson representing Monroe Township in Wyoming County during Pennsylvania's May 2026 primary election.

According to a public statement from Jackie Stockage, county chair Pamela Hemann informed her during an individual discussion that she would no longer be permitted to participate or vote on behalf of the precinct that had elected her due to her association with the Plaintiff.

Therefore, this associational decision constituted additional harm to the voters negating their cast votes that elected Stockage and Stockage herself.

**D. The July 28 Disciplinary Hearing and the Political Activity Cited Against Stockage**

Plaintiff possesses an audio recording of the hearing conducted on July 28, 2026 and a machine-generated transcript; Plaintiff does not represent that it constitutes a certified verbatim transcription.

Stockage's rights to associate with her preferred political party remained terminated by this action, continuing harm.

Further, during these proceedings, Plaintiff's daughter, Tawny Clark, was referred to by name and attributed conduct that Plaintiff and Tawny maintain did not occur. Tawny was a minor at the time of the alleged conduct. Plaintiff alleges defamatory statements that were made against Tawny constitute a possible form of harm through these proceedings.

**E. The Reported Removal of 76 Democratic Committee Members in Neighboring Lackawanna County**

Lackawanna is geographically seated next to the Plaintiff's home county and congressional district. On June 24, 2026, *The Times-Tribune* reported that the Lackawanna County Democratic Committee had declared 76 elected committee members ineligible because

of their support for independent candidates. Party officials relied upon information concerning political associations, including nomination-petition filings and campaign-finance records, in identifying individuals considered to have violated party rules.

Therefore, the environment to which this occurred demonstrates increased opportunity for harm against anyone identified on the Nomination paperwork.

**F. Pennsylvania's Nomination Framework Required Identification of Political Participants**

The Commonwealth's 2026 instructions require signers to provide their signatures, printed names, residences, and dates of signing. The instructions also require the names of three to five individuals serving on the committee to fill vacancies to appear on every nomination-paper page.

Plaintiff acknowledges that the Commonwealth has legitimate interests in verifying candidate support, preventing fraudulent nominations, and identifying persons responsible for nomination documents.

**G. The Nomination Process Did Not Warn Signers of Potential Consequences**

An individual signing or listed on a nomination paper may understand that the signature supports a candidate's opportunity to qualify for the ballot without understanding that the act of signing could also be used against them.

Nomination instructions do not provide a warning that organizations may use information appearing on nomination papers to identify members supporting independent candidates and impose disciplinary consequences to them, especially retroactively.

Plaintiff maintains that individuals signed her nomination papers before these consequences became apparent and there was no remaining time to re-educate those that signed and, if necessary, recollect such a high number of signatures.

The Commonwealth's nomination framework did not provide Plaintiff with a means of shielding identifying information. This is compounded by the rules indicating corrections to nomination paperwork could invalidate entire pages.

Plaintiff therefore faced a conflict between completing the statutory nomination process and protecting individuals who had participated from the potential consequences of disclosure.

**H. Disclosure-Related Consequences Experienced by a Member of Plaintiff's Nomination Committee**

As an example, an individual serving on Plaintiff's nomination committee is a transgender man whose legal name differs from the name he ordinarily uses in public. The nomination paperwork identified this individual by his legal name providing his address on every single page as is required. This individual has given express permission to the Plaintiff to discuss this.

Plaintiff reports that the individual experienced hostility, including derogatory remarks and threats, in connection with his participation in Plaintiff's campaign.

These interactions occurred after his legal name had been placed on the nomination paperwork and after those nomination forms had been signed by voters.

Plaintiff does not contend that the Commonwealth directed or encouraged the conduct.

Rather, the circumstances demonstrate the sensitivity of identifying information concerning political participants, particularly where the required identification may reveal information an individual does not ordinarily disclose for safety reasons providing a direct mechanism to harm.

**I. The Developing Consequences of Political Identification and Plaintiff's Decision Not to Submit Nomination Papers**

Plaintiff was therefore confronted with a decision concerning submission of nomination materials containing identifying information. Plaintiff ultimately did not submit the nomination

papers to the Commonwealth. No administrative determination was made concerning the validity or sufficiency of the signatures collected; therefore, Plaintiff does not contend that these requirements were satisfied.

Her contention is that the decision not to submit nomination papers cannot be evaluated independently of the burdens and circumstances that influenced it.

Plaintiff maintains that submission would have required disclosure of identifying information concerning participants where adverse consequences associated with political support had already been documented. These adverse consequences are not, however, limited to the Democratic Party but are a result of forced public political association.

J. The Timing of Plaintiff's Request and the Development of the Alleged Constitutional Injury

The Defendant emphasizes that Plaintiff knew of the independent signature requirement months before filing suit. Plaintiff does not dispute that the calculation for the signature requirement was publicly available before the independent nomination deadline.

Her constitutional challenge, however, is not based solely upon the existence of the much higher numerical requirement, though it is impactful and lends to the idea of democratic cartelization.

Factual circumstances relevant to the alleged associational burdens developed during the independent nomination period.

The removal of Stockage provided a concrete example of adverse consequences impacting the greater electorate and was due to public support for Plaintiff's candidacy.

On June 24 a report concerning a neighboring county provided additional evidence of consequences associated with supporting independent candidates, including the use of historical petition information.

These events are relevant to the timing of Plaintiff's decision concerning submission of nomination papers.

Threat of harm is further compounded by threats of violence and retaliatory conduct committed before and after the dissolution of association, putting signers of the earlier Democratic petitions also at risk.

Plaintiff also maintains that the period between filing her complaint on September 15 and seeking emergency relief on September 25 included compliance with Court directions and barriers accessing the electronic filing system. Plaintiff received a Court directive by mail and encountered a technical issue involving CM/ECF access. She communicated with Court personnel concerning that issue and it was resolved.

Plaintiff respectfully acknowledges that she is not an attorney and continues to learn the procedural requirements governing federal litigation. She apologizes to the Court for any procedural difficulties her inexperience may have caused.

Plaintiff does not contend that these circumstances eliminate the equitable significance of delay. Rather, she maintains that the Court should evaluate the actual chronology, including the development of the alleged injury and the procedural circumstances surrounding the filings.

This distinction is important because the Defendant's delay argument rests substantially upon the premise that Plaintiff could have asserted the same constitutional injury at any point after learning the signature requirement.

Plaintiff maintains that the circumstances underlying her as-applied challenge developed materially during the nomination period.

K. Election Administration Has Advanced During the Pendency of This Litigation

The November 3, 2026, general election is approaching.

The Secretary's opposition describes substantial election-administration activity already undertaken by Pennsylvania counties while simultaneously asking for extended time to respond to the court.

Plaintiff does not dispute that these circumstances are relevant to the feasibility of preliminary relief nor does she contend the rights of voters who have already cast ballots may be disregarded.

Rather, Plaintiff has requested relief intended to preserve a meaningful opportunity for judicial review and preserve adequate time for the Defense.

Plaintiff also maintains that the Court should distinguish between administrative difficulty and legal impossibility when evaluating the Secretary's assertions concerning available relief.

## II. ARTICLE III STANDING

### A. Plaintiff Challenges State-Imposed Ballot-Access Requirements, Not Merely Private Political-Party Conduct

Plaintiff does not contend that Secretary Schmidt personally directed disciplinary proceedings or authorized threats against individuals associated with Plaintiff's campaign.

Rather, Plaintiff challenges the Commonwealth's statutory framework governing independent nomination papers, including the signature threshold, the identification requirements imposed upon individuals participating in the nomination process, and the procedures through which identifying information becomes available leading to exclusion from the ballot.

Plaintiff contends that the challenged state requirements materially contributed to an injury that an order against the Secretary can redress.

**B. The State-Action Distinction and the Electoral Process**

Plaintiff recognizes the limits on treating private party conduct as governmental action. As Max v. Republican Committee of Lancaster County, 587 F.3d 198 (3d Cir. 2009), Nixon v. Condon, 286 U.S. 73 (1932), and Terry v. Adams, 345 U.S. 461 (1953), illustrate, private organizations may implicate constitutional restrictions when their conduct is sufficiently entwined with state-delegated electoral functions. While those decisions do not establish that the disciplinary conduct alleged here was state action, Plaintiff challenges the Secretary's administration of nomination and disclosure requirements; private conduct is offered as evidence of the burden those requirements impose.

**C. Plaintiff Has Alleged Concrete Injuries to Her Own Candidacy and Political Participation**

Article III requires a plaintiff to establish an injury in fact that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical according to *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiff circulated nomination papers, recruited volunteer circulators, obtained signatures, and attempted to satisfy the Commonwealth's requirements for participation in the November 2026 general election. The alleged injuries include a burden of complying with the differing nomination requirements, the conflict between completing the filing process and exposing identifying information concerning political participants, and the resulting loss of an opportunity to seek ballot qualification through that process.

**D. The Documentary Record Provides Evidence of Foreseeable Consequences Associated with Political Identification**

The Secretary characterizes the alleged retaliation as involving only a small number of individuals and argues that Plaintiff has not established that ordinary nomination-paper signers faced comparable risks.

Plaintiff does not contend that every person signing Plaintiff's nomination papers faced equivalent direct consequences but their presence on those forms restricts their rights to association through its interaction with any similar bylaw from any organization or entity. According to Elrod v. Burns, 427 U.S. 347 (1976), Constitutional injury can occur even without a formal prohibition.

**E. The Absence of Notice Concerning Potential Disciplinary Consequences Is Relevant to the Alleged Associational Burden**

An individual signing a nomination paper may understand that the signature assists a candidate in qualifying for the ballot without appreciating that the act of signing could also become evidence used against them.

**F. Pennsylvania's Mandatory Disclosure and Public-Examination Procedures Create a Continuing Risk of Retaliation Against Political Association**

The Secretary relies upon *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014), to argue that Plaintiff cannot establish causation because the alleged retaliation against political supporters was undertaken by private organizations but fails to understand that this action goes beyond party participation.

Plaintiff challenges the combined operation of statutory requirements that compel political identification, provides for examination of submitted nomination papers, and permits identifying information to be available beyond its immediate use in determining ballot eligibility in addition to an overly burdensome increase in signatures required to ballot or replace should

there be a reason to remove said association. The Constitutional concern compounds because information can also be used to identify individuals for unrelated retaliatory action which was the exact consideration used by states historically adopting the Australian Secret Ballot process for voting.

The State's legitimate interest in permitting examination of nomination papers does not resolve whether the scope, duration, and consequences of disclosure impose an excessive burden upon protected political activity.

The asserted causal relationship is not between the Secretary and private retaliation, but between the Commonwealth's identification and disclosure requirements, the foreseeable risk of retaliation, and the resulting chilling effect on Plaintiff's ability to complete the nomination process.

Under *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014), the relevant inquiry requires examination of whether the challenged governmental framework has a sufficiently direct causal relationship to the alleged injury and includes third-party conduct.

**G. The Secretary Improperly Treats Components of a Nomination Filing as Independent Failures to Comply**

The Secretary argues that Plaintiff's failure to submit nomination papers, a candidate affidavit, and the required filing fee defeats her claim for relief but does not account for the fact that those components were required to be submitted together.

Plaintiff was informed by the elections office that the nomination papers, candidate affidavit, and filing fee constituted components of a single filing transaction and would not be accepted separately. Plaintiff could not independently submit the candidate affidavit or tender

the filing fee while withholding nomination papers. Plaintiff was not advised of an alternative procedure permitting separate submission.

The absence of the affidavit and filing fee therefore cannot fairly be characterized as additional, independent decisions to abandon the nomination process.

Plaintiff maintains that aforementioned circumstances created a substantial concern that submitting nomination papers would expose more individuals to adverse actions unrelated to the Commonwealth's legitimate interests in election administration.

Plaintiff's decision to withhold the nomination papers followed documented disciplinary consequences involving political association and reflected her concern that complying with the State's identification and disclosure requirements would expose additional supporters to foreseeable retaliation.

Plaintiff's decision concerning disclosure of the nomination papers necessarily affected her ability to complete the entire filing transaction.

On September 15, 2026, Plaintiff filed this federal action and paid the $405 federal civil filing fee to challenge the Commonwealth's nomination requirements.

The significance of this payment is not that it satisfied any portion of Pennsylvania's separate $150 nomination filing fee. Rather, it demonstrates that the comparatively smaller state filing fee was not a financial obstacle preventing Plaintiff from completing her nomination submission.

Plaintiff remains prepared to submit the candidate affidavit and tender the $150 filing fee if the Court authorizes a lawful procedure for completing her nomination submission. Plaintiff does not request an exemption from either requirement.

Plaintiff maintains that the Secretary's reliance upon the absence of three components of a single filing transaction improperly multiplies the significance of one disputed decision.

The relevant inquiry is whether Plaintiff's failure to complete that transaction resulted, at least in material part, from the allegedly unconstitutional burdens imposed by the Commonwealth's nomination framework.

The Commonwealth cannot answer Plaintiff's challenge to the conditions of submission merely by observing that she did not submit the materials subject to those challenged conditions.

The constitutional question remains whether the State's mandatory disclosure and public-examination framework imposed a burden upon political association that contributed to Plaintiff's inability to complete the nomination process.

**H. Redressability Requires Identification of Effective Relief Against the Secretary**

The Secretary relies upon substantial election-administration activity already undertaken for the November 3 general election. The Secretary's assertion that relief is impossible should be evaluated. If administrative deadlines repeatedly prevent judicial review from producing effective relief, constitutional challenges risk becoming meaningless and judicial power is eroded by technological and administrative comfort.

Plaintiff's exclusion from the ballot is an identifiable injury for which ballot placement would provide a direct remedy. The separate questions of whether Plaintiff has established a constitutional violation and whether the Court may lawfully order that remedy should not be confused with whether the requested relief would address this.

Plaintiff seeks preliminary ballot placement to prevent the passage of time from rendering meaningful relief unavailable.

When the same administrative obstacles repeatedly arise in challenges involving independent candidacies, like this, West v. Schmidt and other non-major party candidates, courts should carefully examine whether the practical operation of the election framework leaves meaningful opportunities to defend constitutional rights. Plaintiff does not contend that administrative difficulties establish unconstitutional conduct by themselves. Rather, she maintains that their recurring litigation against Pennsylvania is relevant to the constitutional burdens imposed upon independent political participation and compound injury to constitutional rights.

The Secretary's exhibits corroborate a longstanding campaign by the Plaintiff. The FEC recognizes the Plaintiff as meeting federal minimum requirements since December 2025.

Plaintiff maintains that the constitutional claims should receive meaningful adjudication.

Plaintiff therefore requests immediate placement on the November 3, 2026, ballot as preliminary relief, provided she pay the $150 candidate fee and provide the Candidate’s Affidavit she already prepared. This decision would, of course, be subject to the Court's determination of its legal authority and the applicable constitutional and equitable standards.

**I. The Standing Inquiry Must Address the Actual Constitutional Theory Presented**

The Secretary's opposition characterizes Plaintiff's injury principally as a failure to collect and submit the required number of signatures. However, her constitutional challenge is broader than the numerical signature threshold considered in isolation. That burden includes the potential continuing consequences of political disclosure. The documented adverse actions provide context concerning those consequences.

Plaintiff maintains that these actions are relevant evidence concerning the practical operation of the challenged governmental requirements.

The standing inquiry must answer three questions. Is there injury? Is it traceable? Can the court find a way to address that injury?

Plaintiff suffered a concrete injury through the operation of Pennsylvania's nomination framework. That injury is traceable to the challenged requirements, notwithstanding the involvement of private political organizations. An order directing ballot placement, if legally and practically available, would redress Plaintiff's exclusion from the ballot.

Plaintiff maintains that the Court should evaluate the constitutional theory presented, rather than treating the absence of a completed nomination submission as dispositive of every alleged injury without considering the burdens. The court should also weigh the harm against the public from campaign finance underreporting, retaliation against political participants, predatory barriers to entry and dramatically differing requirements for major and minor party participants.

## III. PLAINTIFF HAS RAISED SUBSTANTIAL CONSTITUTIONAL QUESTIONS CONCERNING BALLOT ACCESS, POLITICAL ASSOCIATION, AND COMPELLED DISCLOSURE

A. The Constitution Protects Political Association Against Unjustified Governmental Disclosure. In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), the Supreme Court recognized that compelled disclosure of organizational membership may substantially burden freedom of association when disclosure exposes individuals to forms of hostility.

The Court explained that governmental interference with associational rights may arise through requirements that discourage individuals from exercising rights. The constitutional concern is therefore not limited to whether the government itself imposes retaliation.

In *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87 (1982), the Court recognized that compelled disclosure of political contributors and campaign participants could

impose unconstitutional burdens upon a minor political party whose members and supporters had experienced threats, harassment, and reprisals.

The Court held that the government's disclosure interests did not justify applying the challenged requirements to that party under those circumstances.

These demonstrate that the First Amendment protects political association against certain compelled disclosures even where the threatened retaliation originates with private individuals or organizations.

In *Doe v. Reed*, 561 U.S. 186 (2010), the Supreme Court upheld public disclosure of referendum petition signatures against a First Amendment challenge, recognizing the government's substantial interest in preserving electoral integrity and permitting public examination of petitions. However, the Court recognized the possibility of an as-applied constitutional challenge where disclosure creates a sufficiently serious risk of threats, harassment, or reprisals.

The particular disclosure requirements, applied in the circumstances presented, impose an unjustified burden upon protected political association.

Pennsylvania requires independent nomination papers to identify individuals who support a candidate's effort to obtain ballot access.

The record presents circumstances in which political-association information has reportedly been used for disciplinary purposes unrelated to verifying nomination eligibility.

The removal proceedings involving Stockage and the reported removal of Democratic committee members in Lackawanna County provide evidence that political identification can have adverse consequences for certain individuals who support independent candidates.

Plaintiff maintains that the evidence requires consideration of whether the State's disclosure framework, as applied to her nomination effort, imposed a sufficiently serious burden upon political participation to require constitutional justification.

**B. Pennsylvania's Ballot-Access Requirements Must Be Evaluated Cumulatively Under the Anderson-Burdick Framework**

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the Court instructed courts to examine the character and magnitude of the asserted injury to constitutional rights, identify the interests advanced by the State, and evaluate the extent to which those interests justify the burdens imposed.

*Burdick v. Takushi*, 504 U.S. 428 (1992), further established that the level of scrutiny depends upon the severity of the burden.

Severe restrictions must be narrowly drawn to advance compelling state interests, while reasonable, nondiscriminatory restrictions generally receive less demanding review.

Plaintiff does not dispute that Pennsylvania possesses legitimate interests in preventing election fraud, verifying candidate support, maintaining orderly elections, and avoiding overcrowded ballots.

However, those interests do not eliminate the obligation to evaluate the actual burdens imposed by the Commonwealth's nomination framework.

Pennsylvania required Plaintiff, as an independent congressional candidate, to obtain 5,525 signatures to qualify for the general-election ballot whereas a Major party candidate is only required to obtain 1,000. The disclosure obligation, in turn, affects the practical consequences of participation where political identification creates a demonstrated concern

about reprisals. These requirements therefore cannot be evaluated as though they operate independently.

Plaintiff maintains that the cumulative burden arose from the interaction of the elevated signature threshold, mandatory political identification, public-examination procedures, and documented disciplinary consequences associated with supporting independent candidates which included the Plaintiff.

The Secretary's reliance upon the Commonwealth's general interest in orderly elections does not, by itself, resolve whether that cumulative burden was constitutionally justified as applied to Plaintiff.

**C. The Secretary's Ballot-Access Authorities Do Not Resolve This As-Applied Disclosure Claim**

Rogers v. Corbett, 468 F.3d 188, 193–96 (3d Cir. 2006), is binding authority applying Anderson-Burdick balancing and recognizing that Pennsylvania may employ different, facially valid ballot-access paths for major-party and minor-party candidates. Plaintiff does not dispute the Commonwealth's legitimate interests in demonstrating a modicum of support, avoiding ballot overcrowding, and preserving orderly elections. See Jenness v. Fortson, 403 U.S. 431 (1971); Storer v. Brown, 415 U.S. 724 (1974); American Party of Texas v. White, 415 U.S. 767 (1974).

The issue not resolved by the facial validity of a signature threshold is whether, on this record, the combined requirements of obtaining signatures, identifying signers and other nomination participants, and making nomination papers available for examination imposed an unjustified as-applied burden upon political association.

The Secretary also cites Atiyeh v. Schmidt, No. 1:26-cv-2813, 2026 WL 3002653 (M.D. Pa. Oct. 6, 2026). Although *Atiyeh v. Schmidt* recognizes the Commonwealth's legitimate authority

to impose reasonable requirements, Plaintiff's challenge is not based upon administrative inconvenience. Rather, Plaintiff alleges that Pennsylvania's independent nomination requirements, operating in circumstances involving documented political retaliation and compelled identification of supporters, imposed a substantial burden upon constitutionally protected political association.

**D. The State's Interest in Election Integrity Does Not Automatically Justify Every Secondary Use of Political-Association Information**

Plaintiff acknowledges that public examination of nomination papers can serve important purposes. Interested parties may have legitimate reasons to determine whether signatures are genuine, whether signers are qualified electors, and whether nomination papers satisfy statutory requirements.

However, the constitutional justification for collecting and examining political-association information must be considered in relation to the burdens that disclosure imposes.

Plaintiff's concern arises from the distinction between using nomination records to verify ballot eligibility and making the same information available to identify individuals by outside sources.

Identification information made publicly available discourages participation in the nomination process without advancing the validity of the nomination itself.

Plaintiff maintains that the foreseeable consequences of mandatory disclosure are relevant to determining whether the State has imposed an excessive burden upon political association.

The evidence concerning Stockage and the reported Lackawanna County removals illustrates why that inquiry matters.

When information revealing political support can be used to impose direct consequences upon identifiable participants, the burden of disclosure may extend beyond the act of signing a nomination paper.

That burden may also affect the candidate's ability to recruit and retain supporters, collect signatures, and complete the nomination process which makes increased numerical requirements more harmful when a candidate is unaffiliated, not less.

**E. The Commonwealth's Requirements Must Be Examined in Light of the Rights of Independent Candidates and Their Supporters**

In *Williams v. Rhodes*, 393 U.S. 23 (1968) the decision recognizes that ballot-access laws can affect the ability of voters to organize around political alternatives outside established party structures.

Plaintiff's challenge concerns the combined effect of Pennsylvania's requirements upon her ability to pursue an independent candidacy and the ability of individuals to support that candidacy without facing potentially adverse consequences from political identification.

Plaintiff notes that no independent candidate has appeared on the general-election ballot in for this position in the plaintiff’s residence’s district since 2014. This provides context for examining the practical accessibility of the independent nomination process.

The Commonwealth's interest in ensuring that candidates demonstrate sufficient support must be balanced against the constitutional interests implicated by the methods used to establish that support.

Plaintiff maintains that the record raises substantial questions concerning whether the challenged requirements, as applied to her nomination effort, imposed burdens exceeding those justified by the Commonwealth's asserted interests.

The Court should therefore evaluate the complete operation of the nomination framework rather than isolating the signature threshold from the disclosure requirements and their practical consequences.

## IV. THE REMAINING PRELIMINARY INJUNCTION FACTORS FAVOR RELIEF

### A. The Alleged Constitutional Injuries Are Irreparable in the Absence of Timely Relief

The Secretary argues that Plaintiff has not established irreparable harm because she did not submit nomination papers before the statutory deadline and delayed seeking judicial intervention.

The Supreme Court has recognized that the loss of First Amendment freedoms, even for minimal periods, may constitute irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

If Plaintiff establishes that Pennsylvania's nomination requirements unconstitutionally burdened her candidacy, a favorable ruling issued only after the election may constitute irreparable injury.

### B. Plaintiff's Documented Efforts to Obtain Legal Representation Demonstrate Diligence Rather Than Unreasonable Delay

The Secretary characterizes Plaintiff's failure to seek judicial intervention before the August 3, 2026, nomination deadline as unreasonable delay. This characterization overlooks Plaintiff's sustained efforts to obtain qualified legal representation, beginning in September 2025, when she first encountered alleged harassment and political retaliation associated with her candidacy.

Plaintiff's diligence also included preserving and distributing documentation of alleged misconduct beginning in September 2025 and repeatedly seeking intervention from Democratic Party leadership to prevent further harm to political participants, as described in Section I(A).

Although Plaintiff's initial concerns and the ballot-access claims now before this Court involve distinct legal questions, both arose from related circumstances and required counsel with specialized knowledge who was willing to undertake politically sensitive litigation. Plaintiff continued seeking representation as those circumstances developed, before the nomination deadline through the present, but the specialized nature and the compounded conflicts of interests did not produce a viable attorney.

Plaintiff also faced uncertainty concerning her legal ability to proceed without counsel as she did not attend law school and has not passed the Pennsylvania Bar. Understanding her campaign to be a separate entity, she questioned whether she could initiate federal litigation personally. When Plaintiff was unable to secure representation, she undertook the necessary research to assert her own claim and attempt to comply with federal procedural requirements.

**C. The Balance of Equities Requires Consideration of Both Election Administration and Constitutional Rights**

The Secretary identifies substantial administrative burdens associated with modifying election procedures after ballot preparation and distribution have begun. However, the Commonwealth's interest in orderly administration must be weighed against the constitutional interests Plaintiff seeks to protect.

*Purcell* does not eliminate the Court's obligation to evaluate whether effective relief remains available when a plaintiff alleges an ongoing constitutional injury.

The appropriate inquiry concerns the actual consequences of the proposed relief, including its feasibility, the potential for voter confusion, and the burden imposed upon election officials.

Plaintiff accordingly requests consideration of the feasibility of any district-specific relief, with protection for ballots already cast and the rights of other candidates.

**D. The Public Interest Includes Both Electoral Stability and Meaningful Political Participation**

The court has an interest in the protection of constitutional rights and the availability of meaningful political choice.

The constitutional rights at issue extend beyond Plaintiff's personal ambition to hold public office.

They concern the ability of voters to associate with independent candidates and the extent to which state-administered nomination procedures may expose participants to adverse consequences because of those associations.

The public interest is not served by disregarding legitimate election-administration concerns and it is not served by allowing administrative deadlines alone to foreclose examination of a potentially unconstitutional burden where effective judicial relief remains possible.

Plaintiff therefore requests that the Court evaluate the competing public interests in the factual circumstances presented.

**E. The Court Should Preserve Its Ability to Provide Meaningful Relief Where Legally and Practically Possible**

The Secretary's opposition emphasizes that election preparations have advanced substantially.

Nevertheless, Plaintiff maintains that the passage of time should not substitute for a determination of whether an effective remedy remains legally and practically available.

Where the passage of time threatens to eliminate the Court's ability to grant effective relief, the need for prompt judicial consideration becomes particularly significant.

## V. THE COURT HAS AUTHORITY TO GRANT MEANINGFUL CONSTITUTIONAL RELIEF

### A. The Constitution, Not the Challenged Statutory Framework or Electronic Election-System Limitations, Governs the Availability of Relief for a Constitutional Violation

The Secretary's opposition emphasizes Plaintiff's failure to satisfy Pennsylvania's statutory nomination requirements and the absence of a completed nomination submission. Those circumstances are relevant to the availability and implementation of relief, but they do not independently resolve the constitutional question before this Court.

Plaintiff does not ask the Court to disregard Pennsylvania law merely because she disagrees with its requirements. She asks the Court to determine whether those requirements, as applied to her candidacy, imposed burdens upon political association and electoral participation that the United States Constitution does not permit.

Federal courts possess authority to grant appropriate prospective relief against state officials to prevent ongoing violations of federal constitutional law. See *Ex parte Young*, 209 U.S. 123 (1908).

Accordingly, the Commonwealth cannot establish that constitutional relief is unavailable merely by demonstrating that Plaintiff did not complete the statutory process requirements she challenges or claim the administrative complications are too burdensome.

Plaintiff maintains that the State's legitimate objectives must be pursued through requirements consistent with the First and Fourteenth Amendments.

If the Court determines that Pennsylvania's independent nomination requirements imposed unconstitutional burdens upon Plaintiff's candidacy, the appropriate remedy must

address those burdens rather than merely direct Plaintiff to comply with the same requirements found constitutionally deficient.

The Commonwealth's election-administration systems, including electronic ballot preparation, programming, and distribution procedures, exist to implement the law. They do not define the limits of constitutional rights or the authority of federal courts to remedy constitutional violations. While technological limitations may affect the form, timing, and feasibility of an injunction, they cannot independently establish that an otherwise unconstitutional burden is permissible. The constitutional inquiry must precede the determination of what relief can lawfully and effectively be implemented.

Plaintiff understands the Court's equitable authority is not unlimited. Any injunction must be tailored to the violation established, must account for the rights of voters and other candidates, and must remain legally and practically capable of implementation.

Nevertheless, the fact that Pennsylvania's Election Code does not expressly authorize a particular remedy does not, alone, establish that a federal court lacks constitutional authority to order it.

Neither the challenged statutory framework nor the technological systems used to administer it may serve as the final authority on whether a constitutional violation warrants judicial relief. That determination belongs to the Court, applying the United States Constitution.

**B. The First Amendment Permits Judicial Protection Against Compelled Political Disclosure When the Record Demonstrates a Serious Risk of Retaliation**

The Supreme Court has recognized that governmental interests in election transparency and petition verification do not render disclosure requirements immune from constitutional review.

In *Doe v. Reed*, 561 U.S. 186 (2010), the Court upheld public disclosure of referendum petition signatures against a facial First Amendment challenge while expressly leaving open the possibility of an as-applied challenge where disclosure creates a sufficiently serious risk of threats, harassment, or reprisals.

Similarly, in *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87 (1982), the Court recognized that demonstrated threats and reprisals against political participants may justify relief from otherwise lawful disclosure requirements.

These decisions each establish that the constitutionality of compelled political disclosure must be evaluated in light of the circumstances presented, rather than determined solely by the government's general authority to collect and examine election records.

The Supreme Court has also recognized the constitutional significance of government action that burdens political association through coercive consequences.

In *Elrod v. Burns*, 427 U.S. 347 (1976), the Court held that dismissing certain public employees because of their political affiliations violated First Amendment protections.

In *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), the Court extended those protections to certain government employment decisions involving hiring, promotion, transfer, and recall.

These decisions demonstrate the constitutional importance of protecting political association against governmental requirements that improperly penalize or coerce political participation.

Plaintiff's challenge concerns the Commonwealth's requirement that independent candidates collect and submit identifying information concerning political supporters through a process permitting examination of those records.

The record includes disciplinary proceedings involving Jackie Stockage, publicly reported removals of Democratic committee members in neighboring Lackawanna County, and hostility experienced by another individual associated with Plaintiff's nomination committee.

Plaintiff maintains that the documented and reported consequences of political identification are relevant to determining whether the State's disclosure requirements imposed an unconstitutional burden upon her ability to pursue an independent candidacy.

The constitutional question is not whether the Commonwealth may collect identifying information for legitimate election purposes in every circumstance.

It is whether the Commonwealth may insist upon the same disclosure requirements, without constitutionally sufficient justification or protection, when their application presents a demonstrated risk of adverse consequences.

**C. The Commonwealth's Filing Procedures Prevented Plaintiff From Separately Completing the Uncontested Components of Her Nomination Submission**

The Secretary argues that Plaintiff's failure to submit nomination papers, a candidate affidavit, and the required filing fee defeats her entitlement to relief.

Plaintiff acknowledges that she did not submit a completed nomination packet before the August 3, 2026, deadline. Although the Commonwealth did not formally reject a completed nomination packet, Plaintiff maintains that the absence of the affidavit and filing fee cannot fairly be characterized as separate failures when the elections office procedures indicate those documents would not be accepted without the nomination papers.

Plaintiff's constitutional challenge concerns the requirements governing submission of those papers.

Plaintiff maintains that the nomination framework required her to choose between completing a process that would expose identifying information concerning political participants and withholding those materials to avoid exposing supporters to foreseeable adverse consequences.

The State's disclosure requirements were therefore not merely procedural steps that Plaintiff failed to complete. They were part of the alleged constitutional burden that influenced her decision not to submit the nomination papers.

Defendant cannot resolve a constitutional challenge to the conditions of nomination submission merely by pointing to Plaintiff's inability to complete the submission under those same challenged conditions.

Plaintiff remains prepared to submit the candidate affidavit and tender the required filing fee if the Court authorizes a lawful procedure for doing so.

The Court must determine whether the challenged requirements imposed a constitutionally significant burden, whether that burden is fairly attributable to state action, and whether an appropriate remedy is available.

**D. Direct Ballot Placement Is Requested as a Remedy for an Established Constitutional Violation**

Plaintiff's primary request remains an injunction directing the Commonwealth to place her name on the ballot for the November 3, 2026, general election.

In *Williams v. Rhodes*, 393 U.S. 23 (1968), the Court invalidated Ohio ballot-access restrictions that unconstitutionally burdened the rights of minor political parties and their supporters. While this does not establish an unconditional entitlement to ballot placement for every candidate the case speaks directly to the idea that “Competition in ideas and

governmental policies is at the core of our electoral process and of the First Amendment freedoms." *Williams v. Rhodes*, 393 U.S. 23, 32 (1968).

In *Williams v. Rhodes*, 393 U.S. 23 (1968), Ohio's deadline for qualifying new political parties for the presidential ballot was February 7, 1968. The Supreme Court issued its decision on October 15, 1968, just 21 days before the November 5, 1968, presidential election. Despite the approaching election, the Court permitted ballot access for the American Independent Party. *Williams* demonstrates that the proximity of an election does not categorically foreclose meaningful judicial relief in a ballot-access dispute. As of the deadline for this brief in support, it will have been 58 years and one day since the Supreme Court did not feel it was too late. In 1968 the State of Ohio was able to satisfy the requests of the court; surely, with the technological advancements we have gained since 1968, the Commonwealth of Pennsylvania could find a way to comply with ballot placement or offer an acceptable alternative. Plaintiff respectfully requests that the Court independently assess the asserted limitations, including whether reasonable alternatives exist, before concluding that meaningful relief is unavailable.

The Court must therefore determine whether the constitutional injury established by the evidence justifies relief from the challenged requirements and, if so, whether direct ballot placement is an appropriately tailored remedy.

Plaintiff therefore requests direct ballot placement to the extent the Court determines that such relief is constitutionally justified as well as legally and practically capable of implementation.

**E. Write-In Voting Is Not a Constitutionally Equivalent Substitute for Ballot Access**

Defense maintains that Plaintiff may pursue election through write-in voting while also suggesting that she could continue canvassing, which she has done, to garner more votes.

However, the existence of a write-in mechanism does not independently resolve the constitutional burden imposed by exclusion from the printed ballot.

Printed ballots identify the candidates seeking office and provide voters with an accessible means of exercising their electoral choices. Write-in voting instead requires voters to independently discover an excluded candidate, obtain the information necessary to support that candidate, and complete additional steps not required of voters selecting printed-ballot candidates. These burdens may be particularly significant for military and overseas voters who have limited exposure to local political coverage and campaign activities who are inaccessible by the plaintiff to canvass.

In *Williams v. Rhodes*, 393 U.S. 23 (1968), and *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the Supreme Court recognized that ballot-access restrictions implicate voters' constitutional rights as well as candidates' rights. Although *Burdick v. Takushi*, 504 U.S. 428 (1992), requires consideration of the overall election framework, it does not establish that write-in availability automatically cures an unconstitutional ballot-access restriction.

The Commonwealth cannot establish that voters retain a meaningful opportunity to choose an excluded candidate merely because a mechanism exists for writing that candidate's name on the ballot. If the challenged restrictions are unconstitutional, the availability of write-in voting does not, by itself, remedy the resulting injury to political association and electoral choice.

**F. The Commonwealth's Election-Administration Concerns Must Be Evaluated Against the Specific Relief Requested**

The Secretary maintains that direct ballot placement cannot be implemented, Plaintiff requests that the Court consider whether that conclusion is supported by the necessary

election procedures, and implementation requirements involved rather than a provided timeline supporting administrative comfort rather than capabilities.

Plaintiff maintains that administrative difficulty should be distinguished from legal impossibility when evaluating whether an effective constitutional remedy remains available.

**G. Plaintiff's Request for Relief**

Plaintiff's primary request is an injunction directing the Secretary of the Commonwealth to take the steps within his lawful authority necessary to place Plaintiff's name on the ballot for the November 3, 2026, general election in Pennsylvania's Ninth Congressional District, upon a determination that such relief is constitutionally warranted and legally capable of implementation.

In the alternative, Plaintiff requests that the Court consider an appropriately tailored injunction addressing the challenged nomination requirements and authorize an expedited procedure for determining whether Plaintiff may qualify for ballot placement without being subjected to unconstitutional disclosure burdens.

If immediate ballot-related relief is unavailable, Plaintiff requests that the Court determine whether any remaining request for prospective relief presents a continuing case or controversy within the Court's jurisdiction.

The central question is not whether Pennsylvania's Election Code expressly permits the relief Plaintiff seeks. It is whether the Constitution requires effective relief from an established violation of the rights protected by the First and Fourteenth Amendments.

## VI. CONCLUSION

Plaintiff challenges the cumulative burden of Pennsylvania's signature and political-identification requirements as applied amid documented disciplinary consequences. Her failure to submit nomination materials is central to the dispute over causation, not an answer to it.

Plaintiff requests preliminary relief directing placement on the November 3, 2026, ballot if constitutionally warranted and legally and practically feasible. Alternatively, she requests tailored relief concerning disclosure and an expedited process or hearing to determine whether effective relief remains available. If election-related relief is unavailable, she asks the Court to assess whether a live controversy supports prospective relief.

Respectfully submitted,

**Jenn Brothers**
Plaintiff, Pro Se
1688 State Route 367
Laceyville, PA 18623
jennbrothersforcongress@gmail.com