**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JENN BROTHERS,<br><br>Plaintiff,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania,<br><br>Defendant. | : | Civil No. 3:26-CV-02642<br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

# MEMORANDUM

Jenn Brothers ("Brothers") is an independent candidate running for Pennsylvania's Ninth Congressional District ("District"). Brothers did not meet the statutory criteria to be placed on the ballot, and she now argues that Pennsylvania's independent candidate ballot access requirements violate her First and Fourteenth Amendment rights. (Doc 1, ¶ 10; Doc 11, p. 5.)[1] She thus seeks a preliminary injunction ordering Secretary of the Commonwealth of Pennsylvania, Al Schmidt ("Secretary"), to place her name on the November 3 ballot. (Doc. 11.)

Even assuming Brothers' claims have merit, her request comes too late. When an election is imminent, the *Purcell* principle cautions courts against interfering with election procedures. And it applies with even greater force once an election has already begun. Accordingly, the court will deny Brothers' motion.

[1] For ease of reference, the court uses the page numbers from the CM/ECF headers.

## BACKGROUND

### A. Brothers' Candidacy for the November 3 Election

Brothers is an independent candidate for the District. (Doc. 1, ¶¶ 1–2.) She originally intended to run as a Democrat, but her plan changed after she allegedly discovered underreporting of campaign finance within the Democratic Party. (*Id.* ¶¶ 2–4.) She claims this discovery led her to seek accountability within the party, but when she did, she was met with harassment and retaliation. (*Id.* ¶¶ 5–6.) Facing this adversity, she decided to leave the party and declared her candidacy as an independent on March 25, 2026. (Doc. 29, p. 3.)

That choice had ramifications on her campaign. Pennsylvania law sets out different ballot access requirements for independent candidates versus major party candidates. As a major party candidate, Brothers would have needed only 1,000 signatures to be placed on the party primary ballot. *See* 25 Pa. Stat. § 2872.1(12). As an independent, she instead had to gather 5,525 signatures to have her name placed on the general election ballot.[2] *See* 25 Pa. Stat. § 2911(b). Additionally, while major party candidates must collect their signatures in just a few weeks, independents have from March until August to canvas for signatures. (Doc. 26-3, ¶¶ 4–6.) Brothers failed to meet the higher signature threshold and ultimately did

[2] The exact number of signatures required varies from election to election, as Pennsylvania law sets the signature threshold for independent candidates to two percent of the highest number of votes received by an elected candidate in the previous election for each office. 25 Pa. Stat. § 2911(b).

not submit any signatures. (Doc. 1, ¶ 10.) As a result, she was not placed on the ballot. (*Id.* ¶ 74.)

Brothers claims that she did not submit the requisite signatures because of the political climate in the Pennsylvania Democratic Party. (*See id.* ¶¶ 52–60.) Brothers alleges that the local Democratic Party has a rule forbidding members from supporting non-party candidates. (*Id.* ¶ 18.) As evidence of this, and in addition to the retaliation she herself suffered, Brothers claims the Democratic Party removed an elected member for supporting her campaign. (*Id.* ¶¶ 21–22.) She fears that if she submits her supporters' signatures as Pennsylvania law requires, the Democratic Party may use the list to retaliate against them as well. (*Id.* ¶¶ 101–15.)

Brothers brings these allegations in the context of an election that is now underway. The general election is on November 3, 2026, and the Uniform and Overseas Civilians Absentee Voting Act ("UOCAVA") requires the state to send ballots to uniformed and overseas civilians at least forty-five days prior to a federal election. 52 U.S.C. § 20302(a)(8)(A). According to a declaration from Deputy Secretary for Elections and Commissions for the Department of State of the Commonwealth of Pennsylvania, Jonathan Marks, every county in the District has already sent out UOCAVA ballots. (Doc. 26-3, ¶ 11.) The declaration further states that county boards of election have already sent out approximately 43,466

mail-in ballots, approximately 8,861 of which have been returned. (*Id.* ¶¶ 16–17.) As for election-day ballots, the declaration states that counties within the District have already begun printing them and testing their electronic voting systems based on those ballots. (Id. ¶¶ 13, 19–20.) Brothers is not listed on any of these ballots.

### B. Procedural History

Brothers filed a complaint alleging violations of her First and Fourteenth Amendment rights on September 15, 2026. (Doc. 1.) She then filed a motion for temporary restraining order and preliminary injunction along with a brief in support on September 25, 2026. (Docs. 11, 12.) The court denied the motion for temporary restraining order on September 25, 2026. (Doc. 13.) The Secretary subsequently filed a brief in opposition to the motion for preliminary injunction on October 9, 2026. (Doc. 26.) Brothers filed her reply brief on October 15, 2026. (Doc. 29.) The motion for preliminary injunction is thus ripe for review.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction over Brothers' claims pursuant to 28 U.S.C. §§ 1331, 1343. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 allows a district court to enter a preliminary injunction. To obtain a preliminary injunction, a plaintiff must

establish: (1) that they are likely to prevail on the merits of the case; (2) that they would suffer irreparable harm if preliminary injunctive relief were denied; (3) that the harm defendants would suffer from the issuance of an injunction would not outweigh the harm plaintiffs would suffer if an injunction were denied; and (4) that the public interest weighs in favor of granting the injunction. *Holland v. Rosen*, 895 F.3d 272, 285–86 (3d Cir. 2018) (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)). The first two factors are "gateway factors": if the plaintiffs have not established those factors, the court need not consider the last two factors. *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). If the plaintiffs do establish the first two factors, "[t]he court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *Id.* (quoting *Reilly*, 858 F.3d at 179).

A party seeking mandatory injunctive relief that would alter, rather than preserve, the status quo, "must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)). To obtain a mandatory injunction, the party seeking such an injunction must show "a substantial

likelihood of success on the merits and that their 'right to relief is indisputably clear.'" *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indus., Inc. v. Chi. Bd. & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Thus, a preliminary injunction should only be awarded in the "limited circumstances" where "the movant, by a clear showing, carries the burden of persuasion." *Holland*, 895 F.3d at 285. Ultimately, the decision of whether to issue a preliminary injunction is left to the sound discretion of the district court. *Pennsylvania v. President of the United States*, 930 F.3d 543, 565 (2019) (citing *Winter*, 555 U.S. at 24).

## DISCUSSION

Brothers seeks a mandatory injunction ordering the Secretary to place her on the ballot for an election one week away. (Doc. 11, p. 5.) She thus faces two high hurdles to succeed. The first is the nature of the relief. As noted above, a plaintiff seeking a mandatory injunction faces an even higher standard for what is already an extraordinary remedy. *Bennington Foods*, 528 F.3d at 179. The second is timing. By nature of mail-in voting, this election has already begun. In this context the Supreme Court has cautioned lower courts from interfering with

election administration in what has come to be called the "*Purcell* principle." *See Purcell v. Gonzales*, 549 U.S. 1, 4–6 (2006) (per curiam). Indeed, *Purcell* weighs so heavily on this case that even assuming Brothers established a likelihood of success on the merits and irreparable harm, the harm to the Secretary and the public from granting the injunction would be even greater. Accordingly, the court will deny Brothers' motion.

**A. The Court Will Deny Brothers' Motion Because the Election Has Already Begun.**

Court orders that change election procedures on the eve of an election cause voter confusion and administrative ordeals. Recognizing this, the Supreme court has repeatedly, and strongly, cautioned lower courts from issuing such orders. *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring) (collecting cases). This guidance "applies with even greater force" once an election has started. *People Not Politicians v. Onder*, No. 26A388, 2026 WL 2883222, at *2 (U.S. Sept. 25, 2026) (per curiam). To avoid these harms, courts consider voter confusion, impact on voters' plans, administrative burden, and the timing of the plaintiff's suit when applying the *Purcell* principle. *Kim v. Hanlon*, 99 F.4th 140, 160–161 (3d Cir. 2024); *see also Reschenthaler v. Schmidt*, 776 F. Supp. 3d 280, 290–91 (M.D. Pa. 2024).

These considerations all favor denying Brothers' motion. Start with the public in this case—voters and election administrators. Granting the injunction

would both disrupt voters' plans and cause confusion. Ballots for uniformed and overseas civilians have already been sent out pursuant to UOCAVA, and some voters have already returned their ballots. (Doc. 26-3, ¶ 11, 16–17.) Anyone who relied on the timely delivery of those ballots to vote would have their plans disrupted. And voters who receive a second, different, ballot after already casting a vote could reasonably question the legitimacy of their previous vote or the integrity of the election system. *See Purcell* 549 U.S. at 4 ("A State indisputably has a compelling interest in preserving the integrity of its election process.") (quoting *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989)). That is all on top of the burden on election administrators, who would have to coordinate mail-in ballots, reprint in-person ballots, and retest electronic voting systems by November 3, 2026.

The timing of the instant motion amplifies all these problems. Brothers filed her complaint on September 15, 2026, and her motion for preliminary injunction on September 25, 2026. (Docs. 1, 11.) That is nearly six months after she declared her candidacy as an independent and either knew, or should have known, about the signature requirement and over forty days after the deadline to submit her signatures. (Doc. 29, p. 3.) Brothers claims that her concerns about retaliation from the Democratic Party only became apparent later in her campaign, but even then, she admits that the "consequences associated with supporting independent

candidates" became apparent by June 24, 2026. (Doc. 29, p. 8.) Brothers further attributes the time between her complaint and motion for preliminary injunction to her unfamiliarity with court procedures. (*Id.*) The court is sympathetic to the difficulties a self-represented litigant faces, but that does not alleviate the burdens on the public granting Brothers' injunction would cause at this late stage.

Granting the injunction would harm the Secretary, too. The Secretary is responsible for overseeing elections in Pennsylvania, and that includes ensuring they comply with applicable law. 25 Pa. Stat. § 2621. An order to add Brothers to the ballot at this stage would conflict with the Secretary's duties under both federal and state law. As discussed above, the federal deadline set by UOCAVA has already passed. 52 U.S.C. § 20302(a)(8)(A). Similarly, state-law mandated deadlines had already passed when Brothers filed her complaint. *See* 25 Pa. Stat. §§ 2941, 2944 (setting the deadline for ballot substitutions as seventy-five days before the election and requiring the Secretary to certify an official candidate list "as soon as possible" thereafter). Beyond legal requirements, the Secretary would suffer the practical burden of coordinating a change to the ballot on the eve of an election.

These circumstances all counsel exercising judicial restraint by denying the motion for preliminary injunction. *Democratic National Committee v. Wisconsin State Legislature*, 592 U.S. 1039, 1044 (2020) (Kavanaugh, J., concurring).

Granting Brothers' motion when ballots are already out and votes have already been cast would cause confusion and harm to both the public and the Secretary. Those harms outweigh any harm to Brothers at this stage, so the court will deny the motion.

## CONCLUSION

For the foregoing reasons, the court will deny Brothers' motion for preliminary injunction. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: October 28, 2026